IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                          |   |              |
|--------------------------|---|--------------|
|                          | : |              |
| IN THE MATTER OF:        | : | CIVIL ACTION |
| JOSEPH A. STRAUB,        | : | No. 14-6607  |
| Debtor.                  | : |              |
|                          | : |              |

**Jones, II      J.**                                    **March 18, 2015**

## MEMORANDUM

Appellants allege that the Bankruptcy Court erred when it extended the time for Appellee to appeal pursuant to Federal Rule of Bankruptcy 8002(d)(1).[1] The Order of the Honorable Richard E. Fehling, dated October 2, 2014, is AFFIRMED.


I.      **Standard of Review**

In a bankruptcy appeal, the District Court "review[s] the Bankruptcy Court's findings of fact for clear error and exercise[s] plenary review over the Bankruptcy Court's legal determinations." *In re Handel,* 570 F.3d 140, 141 (3d Cir. 2009) (citing *In re Woskob*, 305 F.3d 177, 181 (3d Cir. 2002)).

Further, "'[t]he question of excusable neglect [under Rule 8002(d)(1)] is by its very nature left to the discretion of the Bankruptcy Court whose decision should not be set aside unless the reviewing court . . . has a definite and firm conviction that the court below committed a clear error of judgment.'" *In re Kaplan*, 482 F. App'x 704, 707 (3d Cir. 2012) (quoting *In re Lang,* 414 F.3d 1191, 1194 (10th Cir. 2005)).

---

[1] Rule 8002, along with the rest of Part VIII of the Federal Rules of Bankruptcy Procedure, was revised on April 25, 2014 (effective December 1, 2014). The subsection of the Rule at issue here, "Extending the Time to Appeal," which is cited as Rule 8002(c)(2) throughout Appellants' and Appellee's briefs, is now found at Rule 8002(d)(1) and is worded differently, though the substance remains unchanged. The controlling case law for what constitutes excusable neglect pertains to several different Rules of Bankruptcy and Appellate Procedure, all of which contain the same language articulating the same standard and are treated as equivalent by the courts. *See, e.g.*, *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 384 (1993) (interpreting Fed. R. Bankr. P. 9006(b)(1)); *Consol. Freightways Corp. of Delaware v. Larson*, 827 F.2d 916, 918 (3d Cir. 1987) (interpreting Fed. R. App. P. 4(a)(5)); *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 317 (3d Cir. 2012) (same)).

## II.     Statement of Facts

Beginning in October of 2012, attorney Robert Davison, Esq. represented Debtor/Appellee Straub ("Straub") in an adversary proceeding and an involuntary bankruptcy. (Dkt No. 8, App'x at A122, July 28, 2014 Rule 8002(d) Motion Hearing Transcript [hereinafter 8002(d) Trans.] 5:2-4.) In a letter dated December 23, 2013, Mr. Davison notified Straub that he was planning to retire from the practice of law at the end of 2014, and that as such he would be unable to represent Straub on any subsequent appeals stemming from his bankruptcy. (8002(d) Trans. 7:3-7.) The record indicates that Straub understood that Mr. Davison would not represent him in any further proceedings and that he needed to secure new counsel. (8002(d) Trans. 32:23–24.) Mr. Davison anticipated that an appeal would be filed. (8002(d) Trans. 7:24-25.)

On June 3, 2014, the Honorable Richard E. Fehling of the United States Bankruptcy Court for the Eastern District of Pennsylvania entered a judgment in the adversary proceeding against Straub. (8002(d) Trans. 9:24–10:8; *see also In re Straub*, 2014 WL 2506297 (Bankr. E.D. Pa. 2014). When Straub asked Mr. Davison how long he had to file an appeal, Mr. Davison mistakenly instructed Straub that he had thirty (30) days to file an appeal. (8002(d) Trans. 10:12.) In fact, the appeal period expires after fourteen (14) days. Fed. R. Bankr. P. 8002(a). The precise time at which Straub was informed that he did not have thirty[2] days to appeal is unclear from the record, but Mr. Davison testified that he believed it was around the 20th of June, 2014—seventeen days after the order was entered against Straub. (8002(d) Trans. 23:13.)

Mr. Davison called Straub and informed him of the error apparently as soon as he realized it. (8002(d) Trans. 23:13.) Straub retained new counsel and filed a motion to extend time to file notice on July 2nd (the 29th day after the order) under Fed. R. Bankr. P. 8002(d). (Dkt. No. 3, App'x 2, Debtor's Motion to Extend Time to File Notice of Appeal Pursuant to Rules of Bankruptcy Procedure, Rule 8002(C) [hereinafter 8002(d) Motion].)

---

[2] At the July 28, 2014 Hearing on this Motion, both counsel occasionally referred to these thirty (30) days as ten (10) days. (8002(d) Trans. 23:1–9.) Judge Fehling corrected them each at least once. (8002(d) Trans. 23:22.)

2

### III.   Discussion

    a.   Debtor/Appellee's Actions Qualify as "Excusable Neglect" under Fed. R. Bankr. P. 8002(d)(1).

Whether neglect is "excusable" in a bankruptcy context is an equitable inquiry, which must take into account "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993) (holding that an attorney's inadvertent failure to meet a filing deadline may be "excusable neglect"). Acts of counsel are also attributable to the parties themselves. *Id.* at 396.

Under the *Pioneer* factor test, the "relevant circumstances" include "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

Further, under Third Circuit precedent from *Consolidated Freightways Corp. of Delaware v. Larson*,[3] the Court must consider the following "*Consolidated* factors":

> (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

*Consolidated*, 827 F.2d 916, 919 (3d Cir. 1987) (internal citations omitted).

These pre-*Pioneer* factors "'were not restated in *Pioneer*[, but] were instead subsumed in the more general consideration of 'reason for the delay.''"[4] *Ragguette*, 691 F.3d at 327 (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 323 (3d Cir. 2001)); *see also Routes 202 & 309 & Novelties Gifts, Inc. v. Kings Men*, 2014 WL 899136, at *5 (E.D. Pa. 2014)

---

[3] The Third Circuit Court of Appeals has held that the factors it identified in *Consolidated*, decided in 1987 and thus predating *Pioneer*, are compatible with *Pioneer* and "should still be considered in applying the overall approach subsequently set forth by the Supreme Court in *Pioneer*." *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 326 (3d Cir. 2012) (citing *Consol.*, 827 F.2d at 919).

[4] The *Ragguette* court also identified a sixth applicable factor from its decision in *Dominic v. Hess Oil V.I. Corp.*: "'whether the enlargement of time will prejudice the opposing party.'" *Ragguette*, 691 F.3d at 327 (quoting *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988)). However, since this factor <u>is</u> specifically restated by the *Pioneer* court, it will not be considered subsumed in the 'reason for delay' factor and will be analyzed solely through the corresponding *Pioneer* factor.

("In analyzing the more general concept of 'reason for delay,' courts in this Circuit weigh several targeted sub-factors, including [the *Consolidated* factors].").

Therefore, courts in the Third Circuit apply the factors from *Consolidated* in elucidating the "reason for delay" factor from *Pioneer*.

 1. <u>Pioneer Factors as Applied to the Facts at Hand</u>

A discussion of all four *Pioneer* factors follows, focusing on the "reason for delay" factor.[5]

 i. <u>The danger of prejudice to the non-moving party</u>

"[P]rejudice generally occurs where, for instance, the opposing party has lost evidence or placed substantial reliance on the judgment or there is an increased potential for fraud or collusion," rather than consisting of some "'imagined or hypothetical harm.'" *Ragguette*, 691 F.3d at 331–32 (quoting *In re O'Brien Envt'l Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999)).

Here, Appellants do not allege any such circumstances supporting prejudice. As such, this factor weighs in favor of allowing the tardy filing of Appellee's Rule 8002(d) motion.

 ii. <u>The length of the delay and its potential impact on judicial proceedings</u>

"The length of the delay must be examined in 'absolute terms' or in an 'absolute sense,' meaning that the extent of the delay should be considered in isolation." *Ragguette*, 691 F.3d at 332 (quoting *In re O'Brien Envt'l Energy, Inc.*, 188 F.3d at 129–30).

Here, the Bankruptcy Court's decision was announced on June 3, 2014, and Straub filed his motion under Rule 8002(d) on the twenty-ninth day after the decision, or fifteen days after the expiration of the statutory period under Rule 8002(a). After the subsequent hearing on the motion, the Bankruptcy Judge entered an order granting the motion and requiring that the notice of appeal be filed no later than October 14, 2014.

---

[5] The Court notes that Appellants do not independently address any of the *Pioneer* factors except for the "reason for delay" factor (by way of the *Consolidated* subfactors). Appellants argue that the reason for delay factor "appears to be the most important." (Dkt No. 3, Brief for Appellants [hereinafter Brief for Appellants] at 16.) Appellants cite *In re Woskob*, 96 F. App'x 794, 795 (3d Cir. 2004) (not precedential) for this proposition. (Brief for Appellants at 16.) *Woskob* only provides an example of this factor outweighing the other three under the facts of that case, and nowhere announces a per se rule to the effect that the "reason for delay" factor is necessarily the "most important." 96 F. App'x 794 at 795-96. However, there is authority from Sister Circuits in favor of this proposition. *See, e.g.*, *Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ([T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import."). Balancing these considerations, the Court focuses on the "reason for delay" factor.

Exclusive of this appeal, the maximum delay caused by granting Straub's motion would be 120 days, or just less than four months. Appellants do not allege any negative impact caused by delay, and the Bankruptcy Judge found that the delay would "result in neither prejudice to Plaintiffs nor disruption of the efficient administration of [the] case." (Dkt. No. 3, App'x 1, Case No. 11-2217 (Bankr. E.D. Pa.), Order of United States Bankruptcy Court Judge Richard E. Fehling dated October 2, 2014, at 4 [hereinafter 8002(d) Order].) This Court agrees. As such, this factor weighs in favor of allowing the tardy filing of Appellee's Rule 8002(d) motion.

iii.   The reason for the delay

As noted above, courts in the Third Circuit apply the subfactors from *Consolidated* in elucidating this *Pioneer* factor.

The first *Consolidated* subfactor is inadvertence reflecting professional incompetence such as ignorance of the Rules of Procedure. This subfactor is exemplified in *Consolidated* by counsel's failure to read the Rules. *Consolidated*, 827 F.2d at 919 (citing *Campbell v. Bowlin*, 724 F.2d 484 (5th Cir.1984)). Here, where Mr. Davison testified that he "flipped open [his] desk Collier, saw Rule 4 which does not apply here but at the moment . . . thought it did, and in the course of the conversation, . . . told [Straub] 30 days," Mr. Davison both failed to read the Rule and was ignorant of the correct rules. (8002(d) Trans. 10:15–17).

Unlike under the facts of *Consolidated* where a deadline was missed because the notice of appeal was mailed to the wrong place (which was found to be excusable neglect), but like *Raguette* where a deadline was missed due to a failure to make a calendar entry (not excusable), here, the attorney inadvertence runs directly to the timing of the matter. *Consolidated*, 827 F.2d at 917; *Ragguette*, 691 F.3d at 317–19.

The second *Consolidated* subfactor, asserted inadvertence reflecting an easily manufactured excuse incapable of verification by the court, is exemplified in *Consolidated* by a failure to mark an attorney's calendar. *Consolidated*, 827 F.2d at 919 (citing *Airline Pilots v. Executive Airlines, Inc.,* 569 F.2d 1174 (1st Cir. 1978)). The nature of the inadvertence here is similar. These circumstances are not independently verifiable beyond the sworn testimony of Mr. Davison and Appellee Straub.

The third *Consolidated* subfactor, tardiness resulting from counsel's failure to provide for a readily foreseeable consequence, is exemplified in *Consolidated* by a failure to arrange

coverage while an attorney was on vacation. *Consolidated*, 827 F.2d at 919 (citing *United States v. Commonwealth of Virginia,* 508 F.Supp. 187 (E.D.Va.1981)).

The facts in this case suggest an unforeseeable mistake, not a failure to plan ahead. For example, in *U.S. v. Commonwealth of Virginia*, an attorney's vacation was likely to be scheduled in advance and could therefore be planned. Similarly, the *Raguette* court found that counsel's failure to anticipate and rectify a clerical error in that case was a "'failure to provide for a readily foreseeable consequence.'" 691 F.3d at 328 (quoting *Consol. Freightways*, 827 F.2d at 919)). However, the error in *Raguette* was attributed to an inexperienced subordinate of the attorney in question, and the court found that the attorney should have anticipated the possibility that the subordinate would err. *Id.* In contrast, here, Mr. Davison's mistake was not foreseeable either to him nor to Straub.

Appellants argue at length that the delay is inexcusable because it relates to Straub's failure to secure replacement counsel when Mr. Davison notified him of his impending retirement. (Brief for Appellants at 19–20.) The Court notes, however, that the failure was not one of failing to get replacement counsel, but rather the timing of when Appellee sought replacement counsel. Straub was able to find replacement counsel (and that counsel was able to draft and file a motion) within the twelve (12) days following Davison's "epiphany" and subsequent revelation to Straub. (8002(d) Trans. 23:1–9). The poor legal advice about timing substantially caused the delay, not Straub's alleged lack of diligence. If Straub had been correctly informed of the bankruptcy appeal timeline immediately after the Bankruptcy Court's judgment was entered, he could have filed a timely notice of appeal (or at least a timely motion to extend time under Fed. R. Bankr. P. 8002(d)(1)(A)), despite the complexity of his case.

The fourth *Consolidated* subfactor is inadvertence representing a complete lack of diligence. *Consolidated*, 827 F.2d at 919 (citing *Reinsurance Co. of America, Inc. v. Administratia*, 808 F.2d 1249 (7th Cir.1987)). Under the facts of *Consolidated* (notice of appeal mailed to wrong address), the attorney's conduct did not rise (or rather sink) to "a complete lack of diligence," because "counsel acted expeditiously in seeking to cure the delay." *Consolidated*, 827 F.2d at 920. Here, Mr. Davison realized his mistake in what he characterized as an "epiphany" "in the middle of the night" and told Straub of it by telephone, apparently on the same day. (8002(d) Trans. 23:1–9.) Straub filed a motion to extend time under Rule 8002(d) twelve (12) days after he was informed of the issue. Since that time also encompassed securing

new counsel, and fell both within the outside limit of thirty-five (35) days set by Rule 8002(d)(1)(B) and within the erroneous original timeframe, it appears that both Straub and Mr. Davison "acted expeditiously in seeking to cure the delay." *Consolidated*, 827 F.2d at 920.

The fifth and final *Consolidated* subfactor is whether the delay occurred "despite counsel's substantial good faith efforts toward compliance." *Id.* at 919. In *Consolidated*, "substantial good faith" was demonstrated by "recognition of the 30 day limit for filing appeals [under rule 4(a)(5)], completion of the Notice of Appeal within the 30 day limit, and timely service of the Notice upon opposing counsel." *Id.* at 920. In interpreting this factor, courts tend to focus on procedural good faith. *See, e.g.*, *Dominic*, 841 F.2d at 517 (discussing service of process). This factor favors Straub for the same reasons as the diligence factor above.

In conclusion, three of the *Consolidated* subfactors (failure to provide for a readily foreseeable consequence, a complete lack of diligence, and a lack of good faith) weigh in favor of considering the reason for delay an excusable one, while two (professional incompetence, an easily manufactured excuse incapable of verification) weigh against. The *Consolidated* court provided the following guidance on how to balance the subfactors:

> This court interprets [the Rule] to require a finding of excusable neglect in those instances where the court, after weighing the relevant considerations is satisfied that counsel has exhibited substantial diligence, professional competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as the result of some minor neglect, compliance was not achieved.

*Consolidated*, 827 F.2d at 920.

In *New Jersey Payphone Ass'n, Inc. v. Town of W. New York*, the United States District Court for the District of New Jersey balanced the *Pioneer* and *Consolidated* factors and granted the movant's request to extend time, despite the movant's ignorance of the rules of procedure and the deadlines they contained, when the other factors favored it. 155 F. Supp. 2d 122, 125–26 (D.N.J. 2001).

As such, based the preponderance of the *Consolidated* subfactors, the *Pioneer* factor of "reason for delay" weighs in favor of finding Appellee's neglect excusable and allowing the tardy filing of Appellee's Rule 8002(d) Motion.

        iv.    <u>Whether the movant acted in good faith</u>

Appellants argue that despite Judge Fehling's conclusion to the contrary, good faith is impossible because Straub's Rule 8002(d) Motion stated that "Attorney Davison intended to file

7

a Notice of Appeal in the matter," when in fact Straub testified that he at no time believed that Mr. Davison would handle any appeal resulting from the underlying case. (8002(d) Trans. 32:23–24; Brief for Appellants at 10; *see also* 8002(d) Motion ¶10.)

The Court finds no evidence that the discrepancy between Straub's testimony and his motion is due to any contumaciousness or malevolent strategy. On the contrary—it seems to be another instance of carelessness on the part of Straub and his counsel.

### 2.   Conclusion

In weighing all four *Pioneer* factors, Straub's actions and those of his counsel where relevant constitute excusable neglect under Fed. R. Bankr. P. 8002. The Bankruptcy Court did not abuse its discretion in granting Straub's Rule 8002(d)(1) motion.

### b.   The Bankruptcy Court Committed an Error of Law by Concluding that the Doctrine of Unclean Hands was Applicable against the Creditors/Appellants.

Courts apply the doctrine of unclean hands when "'some unconscionable act of one coming for relief has immediate and necessary relation to the equity that' the party seeks." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). In general, the conduct must be "offensive to the dictates of natural justice." *Keystone*, 290 U.S. at 245. The doctrine is only applicable against the party seeking relief in a matter. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (citing *Keystone*, 290 U.S. at 245). If a court finds that a party comes before it with unclean hands, the remedy that the party seeks will be withheld. *Keystone*, 290 U.S. at 245. Finally, courts "apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice." *Id.*

Here, the Bankruptcy Court found that Appellants appeared before the Bankruptcy Court with unclean hands "having also failed to comply with a time deadline in connection with the filing of [the underlying] adversary complaint." (8002(d) Order at 4.) While missing a deadline in connection with the underlying action may be of "immediate and necessary relation" to the relief sought in Appellee's 8002(d) Motion, it is not unconscionable or "offensive to the dictates of natural justice." *In re New Valley*, 181 F.3d at 525; *Keystone*, 290 U.S. at 245.

Application of the doctrine here would resemble punishment far more than it would "the advancement of right and justice" because the Appellants' prior failing had no bearing on the facts of the motion at hand, and in no way affected Appellee in the present proceeding. *Keystone*,

290 U.S. at 245. Further, since it is Appellee who sought relief in the motion which resulted in this appeal, the doctrine is not applicable against Appellants because they are not the party seeking relief.

Thus, the Bankruptcy Court erred as a matter of law in applying the doctrine of unclean hands against Appellants. However, this error is harmless. Having conducted an independent review of the issue *supra*, the Court finds that there were unique grounds to grant the extension beyond the doctrine of unclean hands. The Bankruptcy Court's order is valid alone on the strength of the conclusion that Straub's neglect was excusable. Therefore, it is not necessary to remand this point to the Bankruptcy Court.

## IV.    Conclusion

While this Court concludes that the Bankruptcy Court erred in applying the doctrine of unclean hands to the Appellants, the Court agrees with the Bankruptcy Court's conclusion that Appellee's conduct satisfied the preponderance of relevant factors under *Pioneer* and *Consolidated* constituting "excusable neglect" under Fed. R. Bankr. P. 8002. Therefore, the order of the Bankruptcy Court is hereby AFFIRMED.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. DARNELL JONES, II          J.